IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MOUNTAIN LAUREL ASSURANCE
COMPANY,

    Plaintiff,

v.                                  No. 13-1059

JESSE DANIEL SCOTT SALINAS,
WILDA PERKINS and JAMES PERKINS,

    Defendants.

## MEMORANDUM OPINION

### INTRODUCTION

This action for declaratory judgment, filed February 15, 2013, relates to a dispute over insurance liability coverage for Defendant, Jesse Daniel Scott Salinas, who was involved in an April 2011 automobile collision with Defendant, Wilda Perkins. Mrs. Perkins sustained personal injuries and property damage to the vehicle she was operating and owned by her and her husband, James Perkins, who is also a Defendant. The Court tried this civil action without a jury on January 13, 2014. Rule 52 of the Federal Rules of Civil Procedure requires that, "[i]n an action tried on the facts without a jury . . ., the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). In accordance with the Rule, the Court incorporates herein the findings and conclusions that it stated at the trial and further finds and states the following.

### FINDINGS OF FACT

On April 26, 2011, while operating a 2008 Chevy Cobalt owned by his then-girlfriend Jennifer Holcomb and insured by the Plaintiff, Mountain Laurel Assurance Company ("Mt. Laurel"),

Salinas had a collision with Mrs. Perkins. The insurance policy (policy 900056831) that Mt. Laurel issued to Holcomb provided liability insurance coverage "for bodily injury and property damage for which an insured person becomes legally responsible because of an accident." The policy defined an "insured person" as (1) the named insured; (2) the named insured's spouse residing in the same household; (3) a relative of the named insured residing in the same household and related to the named insured by blood, marriage, or adoption; or (4) a person using the vehicle with the named insured's permission. It listed only Holcomb as a named insured on the applicable declarations page. On the date of the underlying accident, Salinas and Holcomb were not married and not related. Salinas's only connection to Holcomb at the time of the accident was as the father of her minor children, which is insufficient to establish Salinas's status as Holcomb's spouse or as a relative to Holcomb by blood, marriage, or adoption. Therefore, the Court finds Salinas was neither a relative nor spouse of Holcomb under the language of the policy.

As of and on the date of the subject accident, Holcomb and Salinas, along with their minor children, shared a residence. Holcomb was the primary breadwinner for the household through her job working an 11 p.m. to 7 a.m. shift as a licensed practical nurse (LPN). Salinas stayed at home with the children while Holcomb worked, and watched the children while she slept during the day after returning from work. Salinas owned approximately twenty roosters and chickens, which he kept at the home he shared with Holcomb. On occasion, he traded the roosters and chickens for other items.

Salinas did not own a car and did not have a valid driver's license. Before the accident date, Holcomb had specifically told Salinas that he did not have permission, then or in the future, to drive her car because he did not have a driver's license and therefore could not legally operate a vehicle.

Holcomb gave this admonition upon discovering that Salinas had driven her car on one occasion to a gas station near their home without her knowledge. At no time between this incident and the accident date did Salinas's license become reinstated.

On the morning of April 26th, Holcomb returned home from her work and went to sleep in the bedroom she shared with Salinas, who was at that time still asleep from the night before. Before getting into bed, she put earplugs in her ears and placed her purse, which contained her car keys, on the night stand next to the bed. According to Salinas, he initiated a conversation with her, either as she was falling asleep or sometime later, after she had fallen asleep, concerning his desire to meet up with a friend that afternoon for the purpose of trading chickens. He apparently wanted Holcomb to drive him there. Not receiving the answer he wanted, Salinas declared that he was going to take her car while she was asleep and drive himself. Holcomb did not respond or otherwise acknowledge what Salinas had said. She never gave him permission to drive her car.

At approximately 2 p.m. that day, while Holcomb was still asleep, Salinas took the keys to the Cobalt from Holcomb's purse and drove to meet his friend. The collision involving Mrs. Perkins occurred at approximately 5 p.m. Afterward, Salinas called Holcomb to tell her what had happened. Apparently, she was still asleep but awakened by the phone ringing.

## CONCLUSIONS OF LAW

In this action, the Plaintiff seeks a declaration that it was not obligated to indemnify Salinas and provided no liability coverage under the insurance policy to him for the claims made by the Perkinses in a separate suit pending against Holcomb and Salinas in state court, Perkins v. Salinas, No. C-12-114 (Madison County, Tenn. Cir. Ct., filed Apr. 25, 2012). Mt. Laurel contends that because Salinas was not an "insured person" under the policy at the time of the subject collision, it

was not obligated to pay any damages arising from the accident.

The disputed issues concerning the insurance policy in question, which was issued and delivered to Holcomb in Tennessee, are governed by Tennessee substantive law. *See* Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc., 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998)("In the absence of an enforceable choice of law clause, Tennessee courts apply the substantive law of the state in which the policy was issued and delivered."); *accord* Hartford Cas. Ins. Co. v. Ewan, 890 F. Supp. 2d 886, 891–92 (W.D. Tenn. 2012).

The burden of proof regarding a condition of insurance, as opposed to an exclusion from insurance coverage, falls on the party claiming insurance coverage and not on the insurer. *See* Farmers Bank & Trust Co. v. Transamerica Ins. Co., 674 F.2d 548, 550 (6th Cir. 1982), *cert. denied*, 459 U.S. 943, 103 S. Ct. 257, 74 L. Ed. 2d 200 (1982); McDonough v. State Farm Mut. Auto. Ins. Co., 755 S.W.2d 57, 59, 67 (Tenn. Ct. App. 1988); Epstein v. Great Am. Ins. Co., 392 S.W.2d 331, 333 (Tenn. Ct. App. 1965). The determinative language in this case regarding whether Salinas was an "insured person" under Holcomb's insurance policy is contained in the Insuring Agreement and Definitions sections of the policy, and nothing in the exclusions portion of the policy is relevant to the issue. Thus, the Perkinses, as the party claiming insurance coverage for Salinas, have the burden of proof to show that a condition of coverage–here, that Salinas was an insured person–had been met.

The Court finds that Salinas was not a named insured, nor was he the spouse or relative of a named insured, as those terms are defined in the policy. Therefore, to establish that Salinas was an insured person under the policy, the Perkinses must prove that he "was a person using the vehicle with the named insured's permission."

4

Tennessee recognizes both express and implied permission. Permission can be implied from the act or conduct of the named insured amounting to an intended selection of another to operate the automobile. Nat'l Serv. Fire Ins. Co. v. Williams, 454 S.W.2d 362, 364 (Tenn. Ct. App. 1969); Card v. Commercial Cas. Ins. Co., 95 S.W.2d 1281, 1285 (Tenn. Ct. App. 1936). "No implied permission can arise merely because a man obtained possession of the car, without the knowledge of the named [insured]." Williams, 454 S. W. 2d at 364 (quoting Card, 95 S.W.2d at 1285). "The essential point is whether the named [insured] exercises his personal discretion and grants his own permission to the particular person." Id. The Court finds that the named insured, Holcomb, neither explicitly nor implicitly granted permission to Salinas to operate her vehicle on the date of the underlying accident or at any other time relevant to this matter. Holcomb had specifically instructed Salinas before the accident that he was not to use her vehicle, and even Salinas admitted that Holcomb did not expressly so permit him to do so, (*see* Salinas Depo. 40: 8–15, D.E. 59-1). Thus, the Court finds that Holcomb did not expressly allow Salinas to use her vehicle on the accident date.

Further, Holcomb did not act in a manner that would provide any implied permission to Defendant to operate her vehicle. Whether asleep or awake, she never acknowledged Salinas's declaration that he was going to use her car the afternoon of the accident. In addition, Salinas conceded that when he took Holcomb's keys and drove her vehicle on the date of the accident, he was "still going by the assumption that [he did not] have permission from when she told [him] previously [he did not] have permission[.]" (Salinas Depo. 40:11–15.) This admission confirms that Salinas took the vehicle in disregard of Holcomb's prior denial of permission and her admonition to him not to drive it because of his lack of a valid driver's license. Although "under some circumstances mere silence may be sufficient" to create implied permission, *see* Williams, 454

5

S.W.2d at 364, that is not the case here where there was a standing denial of permission, of which Salinas was well aware and which had not been relented.  Considering all the evidence presented, Holcomb did not act in any manner that would reasonably suggest permission to Salinas to drive her vehicle.

On that basis, the Court also concludes that the family purpose doctrine is inapplicable here. In Tennessee, the family purpose doctrine imposes vicarious liability on a head of household for his or her family member's negligent operation of a vehicle where the head of household maintains the vehicle "for the purpose of providing pleasure or comfort for his or her family," and the family member was driving the vehicle "in furtherance of that purpose" at the relevant time *with the head of household's permission*, either express or implied.  Starr v. Hill, 353 S.W.3d 478, 482 (Tenn. 2011).  Because Holcomb gave neither express nor implied permission to Salinas to drive her vehicle on the date of the accident, the Perkinses have not established the required elements of the family purpose doctrine.

Based on the foregoing findings of fact and conclusions of law, as well as those stated at the trial of this matter, this Court concludes that Salinas was not insured under the policy issued by Mt. Laurel to Holcomb; that Plaintiff owed no duties to Salinas under said insurance policy; and that Mt. Laurel was not obligated to any third parties, including the Perkinses, under the insurance policy for any actions or omissions by Salinas.

IT IS SO ORDERED this 17th day of January, 2014.

                                      s/ J. DANIEL BREEN
                                      CHIEF UNITED STATES DISTRICT JUDGE